IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor, ) | |
| United States Dept. of Labor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:04CV00854 |
| ) | |
| TERRY RHOADES and WESLEY ) | |
| WALKER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

**Sharp, Magistrate Judge**

This matter comes before the Court on motions for summary judgment filed by Plaintiff Elaine Chao ("the Secretary") (Pleading No. 11) and Defendant Wesley Walker ("Walker") (Pleading Nos. 20, 22). The motions have been fully briefed and are ready for a ruling.

**Procedural Background**

The Secretary filed this action against two former officers and directors of War Enterprises, Inc. ("WAR"), seeking to enjoin acts and recover damages for the Defendants' alleged violation of the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* (West 1999). In her Complaint, the Secretary alleges that the Defendants,

acting as ERISA fiduciaries, violated a number of ERISA provisions.[1] The gist of the Complaint is that the Defendants breached their fiduciary duties by commingling general corporate assets with assets of the SIMPLE IRA Plan ("the Plan"), acting imprudently in the management of Plan assets, engaging in insider activities, and failing to act solely in the interest of the participants and beneficiaries. A prerequisite for each of these claims is a finding that the Defendants acted as fiduciaries with respect to Plan assets and, as a result, caused a loss to the Plan. Among other things, the Secretary seeks damages in the amount of at least $13,625.99.

## Statement of Facts

The following facts are undisputed unless otherwise noted. WAR is a North Carolina corporation formed in 1998 by Wesley Walker and Terry Rhoades. (Pleading No. 12, Pl.'s Br. in Supp. of Mot. for Summ. J., ¶ 1.) Walker and Rhoades initially owned equal shares of WAR, with Walker serving as WAR's President and Rhoades as its Secretary. *Id.* ¶¶ 2, 3. Rhoades handled financial matters at all pertinent times, while Walker was in charge of client development. (Pleading No. 14, Deposition of Wesley Walker ("Walker Dep.") at 30.) In late 1998 or early 1999, WAR hired George Lothian, who received some ownership interest from Walker and Rhoades. (Pl.'s Br., ¶ 4.) Lothian, Walker and Rhoades all served on the company's Board of Directors. *Id.* ¶ 5. In 2000, Dick Farris was hired as WAR's President, and Walker became WAR's Chief Executive Officer. *Id.* ¶ 12.

---

[1] The other defendant, Terry Rhoades, has agreed to enter a consent judgment.

In 1999, the Board approved the implementation of the Plan for its employees. *Id.* ¶ 6. Walker, Rhoades, and Lothian participated in the Plan in 1999, and other WAR employees became eligible to participate sometime thereafter. *Id.* ¶¶ 8, 9. Under the plan, deductions were to be made from the participating employees' wages, with some level of matching by WAR. *Id.* ¶ 9. The parties disagree as to who controlled the management and funding of the Plan. It appears to be undisputed that Rhoades, the company's Chief Financial Officer, had responsibility for withholding and forwarding employee contributions and actually processed payroll each month. *Id.* Walker denies having discretion or control over the Plan, maintaining that Rhoades alone had responsibility for administering the Plan. (Walker Dep. at 21-23, 25-27.) Walker further maintains that Rhoades defrauded the company and concealed his conduct by maintaining three sets of books. *Id.* at 46. Nevertheless, the Secretary argues, Walker acted as the company's CEO and a Board member, had access to company documents, had signatory authority, and therefore functioned as an ERISA fiduciary between 1999 and 2001.

The Plan's statements reflect that WAR only sent one payment to the custodial trustee in mid-1999, on behalf of Walker, Rhoades and Lothian. (Pl.'s Br., ¶ 9.) Thereafter, WAR withheld contributions from its employees' wages, but failed to forward the contributions to the Plan. *Id.* ¶ 11. In connection with an IRS investigation in the spring of 2001, it was discovered that the company was delinquent in payroll taxes and that the Plan had not been funded for two years. *Id.* ¶ 16; *see also* Walker Dep. at 38-47, 64, 75. Although Walker,

Rhoades and Lothian received statements reflecting the Plan's funding (or lack of funding), Walker denies having any knowledge of the company's dire situation until on or about May 18, 2001. *Id.*

After learning of WAR's grim financial situation in May 2001, Walker consulted with family members in an attempt to address WAR's problems. (Walker Dep. at 45-46.) According to Walker, Rhoades told him that he had to pay the Internal Revenue Service $36,236.91 by May 23, 2001 or warrants would issue for their arrest. *Id.* at 54-55. Walker emptied out his savings account and borrowed money from his father in order to meet the company's obligation to the Internal Revenue Service. *Id.* According to the Secretary, when Walker used the borrowed funds to pay the company's taxes, without first paying the Plan, he acted as an ERISA fiduciary and breached his fiduciary obligations to the Plan participants. (Pleading No. 1, Compl.; Pleading No. 12, Pl.'s Br.) Walker denies that he knowingly acted as a fiduciary at any time.

## Discussion

**I.  Summary Judgment Standard**

The summary judgment standard of review under Rule 56 of the Federal Rules of Civil Procedure is well established. A party is entitled to judgment as a matter of law upon a showing that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The material facts are those identified by controlling law as essential elements of claims asserted by the parties. A genuine issue as to such facts exists if the evidence forecast is sufficient

for a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In evaluating a forecast of evidence on summary judgment review, the court must view the facts and inferences reasonably to be drawn from them in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

When the moving party has carried its burden, the nonmoving party must come forward with evidence showing more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *cert. denied,* 481 U.S. 1029 (1987). A mere scintilla of evidence is insufficient to circumvent summary judgment. *Anderson*, 477 U.S. at 252. Instead, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the nonmoving party. *Id*. at 248-49. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

## II.     Statute of Limitations

Defendant Walker moves for summary judgment on grounds that the Secretary filed this ERISA action outside the applicable statute of limitations, which he maintains is three years. (Pleading Nos. 20, 22, Def.'s Mots. for Summ. J.) The Secretary opposes the motion

on the grounds that the applicable statute of limitations is six years and that, even if a three-year statute of limitations applies, the action is timely because the Secretary did not have actual knowledge of the violations until December 1, 2002. (Pleading No. 21, Pl.'s Resp.)

Actions under ERISA for breach of fiduciary duty must be commenced the earlier of (1) six years after the date of the last action that constituted a breach (or the last date an omission could have been cured) or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach. *See* 29 U.S.C. § 1113. To charge the Secretary of Labor with actual knowledge of an ERISA violation, so as to trigger the three-year statute of limitations, it is not enough that the Secretary had notice that something was awry; the Secretary must have had specific knowledge of the actual breach of duty upon which she has sued. *See Brock v. Nellis*, 809 F.2d 753 (11th Cir. 1987).

While the Secretary alleges that the ERISA violations began during the third quarter of 1999, she also alleges that the violations continued through the end of May 2001. Because the Secretary filed suit on September 20, 2004, within six years of that date, the claims are timely. There is no direct or circumstantial evidence that the Secretary of Labor knew about any alleged violations before December 1, 2002, the date on which an individual first filed a complaint with the United States Attorney's office. The action was filed within three years of that date and is timely. Defendant Walker's motion for summary judgment based on the alleged running of the statute of limitations will be denied.

## III. Breach of Fiduciary Duty

The Secretary has moved for summary judgment on the grounds that there are no genuine issues of material fact with regard to Defendant Walker's breach of fiduciary duty. (Pleading No. 11.) Defendant Walker opposes the motion on grounds that a genuine dispute of fact exists concerning the authority, if any, he possessed or exercised in connection with the Plan. (Pleading Nos. 20, 22.) Among the evidence before the Court is the deposition testimony of Wesley Walker, summarized in pertinent part in the Statement of Facts section of this Memorandum Opinion and Order. (Pleading No. 14.) There is no copy of the relevant plan agreement in the record.

Walker's personal liability under ERISA depends on whether he acted as a fiduciary within the meaning of ERISA. The statute provides that a person is a fiduciary with respect to a plan to the extent that he exercises discretionary authority or control respecting management or disposition of plan assets or has any discretionary authority or responsibility in the administration of the plan. 29 U.S.C. § 1002(21)(A). This definition requires a showing that (1) plan assets are at issue; (2) the individual in question exercised authority or control relating to the management or disposition of such assets; and (3) the individual in question breached the fiduciary duty, resulting in a loss to the plan.

The first question before the Court is whether the funds at issue are plan assets, legally speaking. Because ERISA does not define the term "plan assets," courts typically look to the language of the agreement that created the plan or trust agreement to determine whether

certain funds constitute plan assets. *See Connors v. Paybra Mining Co.*, 807 F. Supp. 1242, 1244 (S.D.W. Va. 1992). If an agreement does not explicitly designate unpaid contributions as "plan assets," some courts have been reluctant to designate them as such. *See PMTA-ILA Containerization Fund v. Rose*, No. CIV. A. 94-5635, 1995 WL 461269, at *2 (E.D. Pa. 1995). Neither party has produced a copy of the relevant agreement in this case. The Secretary points to Fourth Circuit and other authority recognizing that *employee contributions* are plan assets. *See Phelps v. C.T. Enterprises, Inc.*, 394 F.3d 213, 220 (4th Cir. 2005); *Professional Helicopter Pilots Ass'n v. Denison*, 804 F. Supp. 1447, 1454 (M.D. Ala. 1992). Walker does not appear to dispute that the unfunded employee contributions are plan assets or even that the funds he borrowed and placed in the corporate account in May 2001 are plan assets. Nevertheless, without the relevant agreement before it, the Court is reluctant to rule as a matter of law on this issue.

The next inquiry is whether Walker acted as a fiduciary at any time between 1999 and June 2001. A person's title does not necessarily determine whether he is a fiduciary. *See Confer v. Custom Eng'g Co.*, 952 F.2d 34, 37 (3d Cir. 1991) (citing 29 C.F.R. § 2509.75-8); *Riley v. Murdock*, 890 F. Supp. 444 (E.D.N.C. 1995), *aff'd*, 83 F.3d 415 (4th Cir. 1996). Rather, the definition focuses on the functions and actions of the person with respect to the plan. *See Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 192 (4th Cir. 2002). Under this functional test, one may act as a fiduciary in some contexts and not others. *Id.*

Case 1:04-cv-00854-PTS   Document 23   Filed 01/10/06   Page 8 of 11

at 193 (*citing Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992).

The factual evidence under consideration supports the Secretary's position on a number of issues. Indeed, the Defendant concedes many of the facts relied on by the Secretary, including his status as CEO of WAR and the fact that he had access to company records and accounts and occasionally signed checks issued by Rhoades. Nevertheless, the key issue – the extent to which Walker in fact exercised discretion over plan assets or participated in plan administration – remains in sharp dispute. Walker's testimony is that between 1999 and May 2001, Rhoades alone handled the company's financial matters. Walker further testifies that Rhoades defrauded the company without the knowledge or participation of Walker or other officers or Board members and that the extent of the fraud ran so deep that no one but Rhoades was aware of any of the company's financial problems (or the unfunded employee contributions) until mid-May 2001, when Rhoades divulged his misconduct. (Walker Dep. at 38-47, 64, 75.) After Rhoades confessed his wrongdoing, Walker was faced with sorting through at least two separate sets of books maintained by Rhoades, attempting to understand the company's true financial situation, immediately paying past due taxes to the Internal Revenue Service, and deciding whether the company would have to file for bankruptcy. *Id.* at 45-51. Even after May 18, 2001, Rhoades continued to play some role in sorting through the financial issues and making the final payroll, although the extent of that role is unclear on the record before the Court. *Id.* at 52.

Accepting Walker's version of events, as the Court is called upon to do in the context of summary judgment review, it appears that Walker attempted to do the right thing and to correct his colleague's fraud as soon as he learned of it, by, among other things, following Rhoades' direction to pay the past due taxes. According to Walker, he never consciously assumed the role of fiduciary with respect to the Plan, but continued to rely on Rhoades' knowledge of these obligations in connection with the final payroll. *Id.* The Secretary relies on a technical reading of ERISA to impose personal liability on Walker for using borrowed funds to pay the Internal Revenue Service instead of funding the Plan on May 23, 2001. The Court is not convinced at this stage that such a reading of the statute is appropriate under the circumstances. *See ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015-16 (11th Cir. 2003) (noting that "[a] person should not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of his status as a fiduciary," and that "[p]reservation of the purposes of ERISA does not require that [the court] ambush corporate officers with stringent fiduciary duties and personal liability based on convoluted contractual language that requires a court to parse and interpret."); *Teamsters Health & Welfare Fund of Philadelphia & Vicinity v. World Transp., Inc.*, 241 F. Supp. 2d 499, 506 (E.D. Penn. 2003) (refusing to impose personal liability on CEO where there was insufficient evidence that he exercised any discretionary control over plan assets or purposely diverted fund contributions, in spite of evidence that occasionally signed company checks and was minimally involved with the

fund contribution procedure). On the record before the Court, the evidence is insufficient to mandate judgment for the Plaintiff, and the case will be set for trial.[2]

### Conclusion

For the reasons stated above, **IT IS HEREBY ORDERED** that the motions for summary judgment filed by Plaintiff Elaine Chao (Pleading No. 11) and Defendant Wesley Walker (Pleading Nos. 20, 22) are **DENIED**. The case between Plaintiff and Defendant Walker is set for a bench trial to commence at 9:30 a.m. on March 21, 2006 in Courtroom 1A. Prior to trial, the parties shall comply in all respects with the pretrial disclosures required by Fed. R. Civ. P. 26(a)(3) and the procedures of LR 40.1. The Secretary shall confer with the *pro se* Defendant regarding the requirements of these rules.

/s/ P. Trevor Sharp<br>
United States Magistrate Judge

Date: January 10, 2006

---

[2] The amount of the loss, if any, is also unclear.